OPINION
Plaintiff-appellant Carol A. Mays appeals from a judgment and decree of divorce. She contends that the trial court erroneously determined that a portion of Fidelity Destiny Account 07069730752-8 was separate property of her former husband, defendant-appellee William B. Mays. Alternatively, she argues that if a portion of that account was Mr. Mays' separate property, then he failed to prove any passive appreciation of the account, and the trial court erred by attributing passive appreciation to him. Mr. Mays cross-appeals, asserting that the trial court erred by awarding Mrs. Mays both attorney fees and the full value of USAA Account No. 005830260, which was marital property.
We conclude that the trial court did not err in its determination that a portion of the account was Mr. Mays' separate property, but did err by attributing passive appreciation of the account, as calculated by Tony Wendeln. The court also did not err in its award of fees to Mrs. Mays, but did err in awarding her the full value of the USAA account. Accordingly, the judgment of the trial court is Affirmed in part, and Reversed in part, and this cause is Remanded for further proceedings in accordance with this opinion.
 I
The parties were married on April 5, 1986, and have two children, Melissa and Wendy. Mrs. Mays filed a complaint for legal separation in October 1998, and filed an amended complaint for divorce in March 1999.
A hearing on the complaint was held before a Magistrate over the course of several days. Of relevance to this appeal, the parties disagreed about the marital value of Fidelity Destiny Plan IRA Account 07069730752-8. Mrs. Mays claimed that the entire asset was marital property, but Mr. Mays testified that he had rolled an IRA that he owned over into the account shortly after the parties married. He argued that the value of that pre-marital IRA, and any passive income attributable to it, are his separate property, which should be excluded from the division of marital property.
The magistrate disagreed:
 [Mr. Mays] maintains that he deposited $10,166.00 into his account shortly after the parties marries [sic] and that the $10,166.00 came from pre-marital/separate property. [He] was unable to establish that the $10,166.00 deposit was from pre-marital sources. . . . [His] testimony above was insufficient to establish that the initial deposit was non-marital, separate property because he lacked credibility and no other evidence was presented that the court can rely upon to show that it was a premarital deposit. The parties stipulated to the value of this account in the amount of $181,091.26.
Accordingly, each of the parties are entitled to one-half of its value. Amended Magistrate's Decision, March 1, 2000, 5-6. (Emphasis added.)
The magistrate also awarded Mrs. Mays exclusive rights to her own IRA with USAA Account No. 005830260, which was marital property having a value of $3,265.87, as and for attorney's fees. Id. at 16.
Both parties objected to the decision. As related to this appeal, Mr. Mays contested the magistrate's decision regarding the marital value of the account, and he challenged the magistrate's award of attorney fees to his former wife. Mrs. Mays objected because she was awarded only a portion of her fees.
The trial court modified the magistrate's decision, finding that a portion of the Fidelity Destiny Account was Mr. Mays' separate property:
 [T]he Court finds that the sum of $10,166.26 from $1,499.94 and $8,666.32 being transferred on July 29, 1980 [sic] into IRA #07069730752-8 and the appreciation thereto is premarital property to which [Mr. Mays] is entitled. The Internal Revenue Code does not permit such transfers into an IRA unless it is a transfer from another retirement vehicle. It is evident that the $10,166.26 was [Mr. Mays'] premarital property. . . . The appreciation of the premarital asset is traceable to [Mr. Mays]. The Court finds from the testimony of Tony Wendelin [sic] that [Mr. Mays] is entitled to the appreciation of such premarital contribution in the amount of $87,354.58 as valued on December 28, 1996. . . . The remainder of the IRA shall be divided equally between the parties.
Order Adopting the Amended Magistrate's Decision in Part and Rejecting and Modifying the Amended Magistrate's Decision, in Part, August 25, 2000, 4-5. (Emphasis added.)
The trial court also awarded Mrs. Mays attorney fees in the amount of $16,000.00 and her IRA with USAA Account No. 005830260, valued at $3,265.87. Id. at 13-14; Final Judgment and Decree of Divorce, 3. On October 30, 2000, a Final Judgment and Decree of Divorce was filed.
From that judgment, both parties appeal.
 II
Mrs. Mays' assignments of error relate to the trial court's determination regarding the marital value of the account, and will be addressed together. In her first assignment of error, Mrs. Mays claims that Mr. Mays failed to prove that any portion of the account was separate property:
 A TRIAL COURT ERRS IN DETERMINING A PREMARITAL INTEREST IN AN ACCOUNT WHERE THE PARTY CLAIMING THE PREMARITAL INTEREST FAILED TO MAKE HIS BURDEN OF PROOF THAT HE HAD A PREMARITAL INTEREST IN SAID ACCOUNT
Alternatively, she argues if Mr. Mays has a premarital interest in the account, he failed to prove any increase in its value:
 A TRIAL COURT ERRS IN AWARDING INTEREST FOR A GAIN ON A NON-MARITAL ASSET WHERE THE PARTY CLAIMING THE NON-MARITAL ASSET HAS FAILED TO PROVE THE GAIN ON SAID ASSET
R.C. 3105.171(A)(6)(a) defines separate property as:
 [A]ll real and personal property and any interest in real or personal property that is found by the court to be any of the following. . . .
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage. . . .
A party seeking to have an asset declared separate property has the burden of proof by a preponderance of the evidence. Peck v. Peck (1994),96 Ohio App.3d 731, 734, 645 N.E.2d 1300, 1302.
We must determine if there is sufficient evidence in the record to support the trial court's determination: (1) that Mr. Mays made a contribution of $10,166.26 in separate property to the account in 1986; and (2) that he is entitled to appreciation on that separate property in the amount of $87,354.58. Appellate courts review a trial court's division of property under an abuse of discretion standard, but a court's classification of property as marital or separate must be supported by the manifest weight of the evidence. Mumma v. Mumma (Mar. 24, 2000), Clark App. No. 99 CA 32, unreported. But see Ricketts v. Ricketts (Feb. 12, 1999), Clark App. No. 97-CA-82, unreported, and Biggers v. Biggers (Feb. 20, 1998), Greene App. No. 97-CA-14, unreported (applying an abuse of discretion standard of review to trial court's determination that certain property was spouse's separate property). When we consider manifest weight arguments, we "review the evidence, and . . . determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof." Howard v. Howard (Mar. 20, 1998), Montgomery App. No. 16542, unreported. If there is sufficient evidence in the record that Mr. Mays rolled a pre-marital IRA over into this account, then that amount, and any passive appreciation he can trace to that separate property, should be deemed to constitute his separate property.
Mr. Mays testified that he opened the account on May 13, 1986, approximately one month after he and Mrs. Mays married, and that he transferred $10,166.00 from Air Academy Federal Credit Union into the account in July 1996. He claimed that the funds from that transfer were part of an initial retirement vehicle that he established in 1982. The trial court disregarded Mr. Mays' testimony, based upon its adoption in part of the Magistrate's Amended Decision, which found that Mr. Mays' testimony lacked credibility.
Our review of the record indicates that even with the exclusion of Mr. Mays' testimony there is competent, credible evidence from which the trial court could find that the July 1986 transfers were from an individual retirement vehicle and remained Mr. Mays' separate property. While no documentary evidence from Mr. Mays was admitted, Mrs. Mays' Exhibit 12 shows that two asset transfers into the account, totaling approximately $10,166.00, occurred on July 29, 1986. Mrs. Mays testified that she thought these two transfers were merely transfers of Mr. Mays' monthly income. However, in 1986, individuals could not transfer more than $2,000 into an IRA unless the individual was rolling over another retirement asset. 26 U.S.C.S. § 408 (1986). Thus, contrary to Mrs. Mays' belief, these asset transfers were not likely to have resulted from a transfer of Mr. Mays' monthly income. As the trial court found, the most plausible explanation for the asset transfer is that Mr. Mays' premarital retirement asset was rolled over into the account in July 1986. Accordingly, this amount remains Mr. Mays' separate property, and Mrs. Mays' first assignment of error is overruled.
In her second assignment of error, Mrs. Mays asserts that Mr. Mays failed to prove by a preponderance of the evidence the amount of passive appreciation attributable to his separate property, because the only evidence that he offered to prove this growth, his expert's testimony, should have been excluded. We agree.
Evid. R. 702 governs the admission of expert testimony. The rule provides:
A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
Absent an abuse of discretion, a trial court's decision regarding the admission of expert testimony will not be reversed. Nilavar v. Osborn (2000), 137 Ohio App.3d 469,493, 738 N.E.2d 1271, 1289. The only evidence Mr. Mays offered to establish the increase in value of his separate property was the testimony of certified public account Mr. Wendeln. Mr. Wendeln testified that Mr. Mays' initial separate property of approximately $10,166.00 had appreciated to a sum of $87,345.58. He reached this conclusion by:
 . . . taking the average rate of return for the fund that those assets were deposited in. . . . The ten[-]year average rate of return was 18.1 percent. . . . So 18.1 percent for a ten[-]year period took us from Eighty-Six to Ninety-Six. We then looked at the one year rate of return for 1997 and the one year rate of return for 1998 and applied those rate of returns to the original number and obtained a — a value that it would have grown to had it been by itself. . . .
Transcript, Vol. II, 526-27.
Mr. Wendeln admitted that the actual rates of return and fees were available to him through Exhibit 12, but that he chose to use averages to make his calculations of the growth on Mr. Mays' separate property. Id. at 538. Mrs. Mays' expert, certified public accountant, John Bosse, testified that Mr. Wendeln should have used the actual rates of returns and fees to calculate the amount of passive income attributable to Mr. Mays as separate property instead of hypothetical numbers. Id. at 555-56.
Here, there is no question that Mr. Wendeln's testimony was a subject fit for expert testimony, since it relates to matters beyond the ken of the average layperson. Nor is there any question that Mr. Wendeln was qualified as an expert witness, because the parties stipulated to his qualifications as one. The question is whether his testimony meets the third condition for admissibility under Evid. R. 702 is his testimony based on reliable scientific, technical, or other specialized knowledge. Nilavar, supra.
We conclude that Mr. Wendeln's evaluation, which did not consider actual rates of return and load fees when those numbers were readily available, is unreliable and cannot be utilized as a foundation for determining passive appreciation pursuant to Evid. R. 702(C)(3), because his use of hypothetical numbers instead of the actual ones is not likely to yield an accurate result. Accordingly, the trial court abused its discretion by admitting his unreliable testimony. With no properly admitted evidence to establish the amount of passive appreciation traceable to Mr. Mays' separate property, the court erred by awarding Mr. Mays this appreciation.
Upon remand, Mr. Mays will have the opportunity to present the evidence he would have presented had the trial court excluded, as it should have done, Mr. Wendeln's testimony on this subject. Upon remand, the trial court may wish to consider two options: (1) it may appoint a special master to determine actual appreciation on the account; or (2) it may allow the parties to present additional expert testimony regarding that amount of appreciation. In either case, those numbers used to arrive at the amount of passive appreciation traceable to Mr. Mays' separate property should be calculated by using the actual rates of returns and fees during the time period in question, instead of hypothetical, average rates of returns and fees.
Mrs. Mays' second assignment of error is sustained.
 IV
In his cross-appeal, Mr. Mays argues that the trial court abused its discretion by awarding Mrs. Mays her attorney fees, because the court failed to take into account her ability to pay for her fees from her property award:
 THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING APPELLANT $16,000.00 IN ATTORNEY'S FEES
 A
A court may order one party to pay another's attorney fees if the shifting of fees are: "(1) authorized by statute, or (2) based upon the court's determination that the party ordered to pay fees has acted `in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons.'" Curtis v. Curtis (2000), 140 Ohio App.3d 812, 815,749 N.E.2d 772, 774 (internal citations omitted). R.C. 3105.18(H) allows a court to require one spouse to pay the other's attorney fees as a form of spousal support if: (1) the party ordered to pay has the ability to pay; and (2) the other party would be prevented from fully litigating the matter and adequately protecting that party's interests if attorney fees were not awarded.[1] Absent an abuse of discretion, we will not reverse the trial court's award of attorney fees. Office v. Office (Jan. 17, 1997), Montgomery App. No. 15278, unreported.
The trial court, relying upon Office, awarded Mrs. Mays her fees under R.C. 3105.18(H):
 [Mr. Mays] is in a superior position to pay the fees in comparison to [Mrs. Mays]. [Mr. Mays] has had the benefit of the marital property since the beginning of the litigation. [Mr. Mays] is in a superior financial position to pay the attorney fees of both of the parties. Even if [Mrs. Mays] worked full time, equity would dictate that [Mr. Mays] should pay the legal fees of both parties up to this time due to their relative incomes and financial circumstances. . . .
Order Adopting the Amended Magistrate's Decision in Part and Rejecting and Modifying the Amended Magistrate's Decision, in Part, August 25, 2000, 14.
Mr. Mays does not dispute the fact that he has the ability to pay the fees, but instead focuses on whether Mrs. Mays would be prevented from fully litigating her interests without an award of reasonable attorney fees, and whether she should have been required to use her portion of the property settlement to fund her litigation. In Office, we held that a trial court did not abuse its discretion by requiring a husband, who had exclusive use and enjoyment of much of the wife's portion of their marital property during the five years of their separation and divorce trial, to pay his wife's legal fees.
Mr. Mays argues that Office is distinguishable because the trial court here failed to make a determination that Mrs. Mays would be prevented from fully litigating her interests without an award of reasonable attorney fees. Contrary to Mr. Mays's argument, however, a court's failure to recite the exact language of R.C. 3105.18(H) is not reversible error if the record supports the trial court's determination. Curtis, supra. The record here supports the trial court's determination, based on Mrs. Mays' income and expenses, that she would be prevented from fully litigating her interest without an award of reasonable attorney fees. Additionally, as in Office, we agree with the trial court that it would be inequitable to require Mrs. Mays to pay her attorney fees out of her property settlement when Mr. Mays has enjoyed the possession of the marital property throughout the course of this litigation.
Moreover, the trial court had an independent basis for awarding Mrs. Mays her fees, based on Mr. Mays' litigation activities throughout the course of the divorce proceedings, including his misrepresentations and financial misconduct, which required her to conduct, in the words of the Magistrate "exhaustive discovery."
 B
Alternatively, though not clearly stated in his assignment of error, Mr. Mays appears to claim that the trial court's property division is inequitable because the court awarded Mrs. Mays the entirety of USAA Account 005830260, which was marital property.
R.C.3105.171(C)(1) provides that "marital property" will be divided equally, unless the court determines that an equal division would be inequitable:
 Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
Thus, a court may award marital property to one of the parties under principles of equity if the trial court complies with the requirements of R.C. 3105.171, including R.C. 3105.171(G), which requires a trial court to make written findings of fact supporting a determination that marital property has been divided equitably. Manemann v. Manemann (Apr. 20, 2001), Clark App. No. 2000CA76, unreported. Absent an abuse of discretion, a trial court's decision regarding the division of marital property will not be reversed. Mumma, supra. An unequal property division does not, standing alone, amount to an abuse of discretion. Brown v. Brown (July 21, 1997), Butler App. No. CA97-01-010, unreported. However, a trial court's failure to consider the factors set forth in R.C.3105.171(F) in arriving at its division of marital property is an abuse of discretion. Manemann, supra.
The trial court's decision does not specify what factors led it to conclude that an unequal award of marital property was necessary in this case regarding IRA Account 005830260. In certain situations, not presented here, the basis for a trial court's decision may be apparent from the record, and no abuse of discretion will be found even in the absence of a trial court's explanation of its reasoning. Mumma, supra. Different earning potential of the parties may provide a sufficient basis for an unequal distribution of marital property in favor of the spouse with the lesser earning potential. Riley v. Riley (May 8, 2000), Butler App. No. CA99-06-107, unreported (internal citations omitted). Additionally, one spouse's lack of credibility regarding the assets and liabilities of the marriage can also provide a basis for an unequal property division. Glick v. Glick (1999), 133 Ohio App.3d 821,729 N.E.2d 1244.
Given our review of the record, however, we conclude that the trial court did not consider the factors under 3105.171(F), nor is its reasoning for the unequal division apparent; thus the trial court abused its discretion by awarding the full value of this account to Mrs. Mays. Upon remand, the trial court should reconsider the division of this marital asset, giving appropriate consideration to the factors set forth in 3105.171(F).
Mr. Mays' assignment of error is overruled in part, and sustained in part.
 V
Mrs. Mays' first assignment of error having been overruled, her second assignment of error having been sustained, and Mr. Mays' assignment of error having been overruled in part and sustained in part, the judgment of the trial court is Affirmed in part, and Reversed in part, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and GRADY, J., concur.
[1] Loc.R. 4.34 of the Court of Common Pleas of Montgomery County, Domestic Relations Division, is substantially similar to R.C.3105.18(H).