DECISION
Tony Scartz, defendant-appellant, appeals a decision of the Franklin County Municipal Court. The trial court held appellant was liable to Roth Produce Company, plaintiff-appellee, for $5,399.74 plus interest.
Appellant is the owner of a restaurant named "Tony's Ristorante." The restaurant is located near downtown Columbus, Ohio. Appellee is a company that delivers fresh produce to restaurants. On December 10, 1999, appellee was scheduled to make a produce delivery to Tony's Ristorante. According to Kenneth Roth, vice-president and part owner of appellee, deliveries to appellant "varied anywhere from 9:30 to 11:30 in the morning [with] approximately 66 percent or two-thirds of [the] deliveries for the month of November and December * * * after 10 o'clock." Roth stated that on December 10 he received a call from one of his delivery drivers. Roth testified the driver told him "he couldn't find anywhere to park to make the delivery."
Appellant testified he did not think he had to pay the delivery bill for December 10 because "they were so late as to maliciously interfere" with his business. Appellee continued deliveries on a daily basis to the restaurant until January 4, 2000. Roth testified the amount of money owed on deliveries after December 10 was "in the neighborhood of $2,400."
On March 31, 2000, appellee filed a complaint against appellant in the trial court. The complaint stated appellant owed appellee $4,059.96 based upon a contractual arrangement between the parties. Ben Roth, the owner of the company, testified that appellant failed to pay his delivery bill for November and December of 1999. Appellee also requested attorney fees based upon the following clause in the contract:
 If undersigned purchaser fails to pay [appellee] in accordance with credit terms set forth herein, purchaser agrees that [appellee] may assess interest on purchaser's outstanding balance at a rate of 1.5% per month (18% per anum). Purchaser further agrees to pay attorney fees equal to one-third of the outstanding account balance and all court costs if same are incurred by [appellee] to collect the account.
After a trial was held on March 23, 2001, the trial court filed a judgment entry, stating in part:
 Upon the testimony presented at trial, and for the reasons expressed on the record, the court hereby renders judgment for [appellee] in the amount of $5,399.74, which includes attorney fees, plus interest. Costs to [appellant].
Appellant appeals this decision and presents the following three assignments of error:
 I. THE TRIAL COURT ERRED IN AWARDING CONTRACTUAL INTEREST AND ATTORNEY FEES TO APPELLEE WHEN IT WAS APPELLEE WHO FAILED TO SUBSTANTIALLY PERFORM UNDER THE CONTRACT.
 II. THE TRIAL COURT ERRED IN ENFORCING THE CONTRACT CLAUSE PURPORTING TO MAKE THE DEBTOR (APPELLANT) RESPONSIBLE FOR A PORTION OF THE LEGAL EXPENSES INCURRED BY THE CREDITOR (APPELLEE).
 III. THE TRIAL COURT ERRED IN MAKING AN AWARD OF ATTORNEY FEES IN THE ABSENCE OF ANY EVIDENCE THAT SUCH FEES WERE NECESSARY AND REASONABLE.
Appellant argues in his first assignment of error the trial court erred when it awarded contractual interest and attorney fees in favor of appellee. Appellant claims the trial court could not do this because appellee "was in material breach of its own contract, thereby releasing Appellant from two decidedly one-sided provisions: eighteen percent annual interest and the attorney fee stipulation."
A contract is a promise or a set of promises for breach of which the law provides a remedy, or the performance of which the law in some way recognizes a duty. Matusoff v. Kuhlman (Sept. 28, 1999), Franklin App. No. 98AP-1405, unreported, following Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos. (1995), 102 Ohio App.3d 708, 712. Parties to a contract in a commercial setting should be free to enter into whatever type of relationship they desire. Gunsorek v. Pingue (1999),135 Ohio App.3d 695, 701. To prove a breach of contract claim, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. Blessing v. Bowersock (Dec. 12, 2000), Franklin App. No. 00AP-635, unreported, following Doner v. Snapp (1994), 98 Ohio App.3d 597,600. "The interpretation of a contract that is clear and unambiguous is a question of law, and no issue of fact exists to be determined." Gray-Jones v. Jones (2000), 137 Ohio App.3d 93, 104.
In the present case, appellant is attempting to use breach of contract by appellee as a defense so as not to be required to pay damages. We note appellant abandoned his argument used at the trial court level that he should not be required to pay for the December 10 delivery because the delivery arrived late. In fact, appellant does not challenge the trial court's finding that he owed appellee $4,059.96 for services rendered pursuant to the written contract between the parties. Appellant only claims he should not be required to pay attorney fees as outlined in the written contract because appellee "was in material breach of its own contract."
There are two major difficulties with appellant's argument. First, a review of the written contract between the parties shows the contract did not include a provision concerning the timeliness of the deliveries. "Courts may not admit parol evidence to vary, alter, or modify the terms of a clear and unambiguous written agreement." Moore v. Cardinal Packaging, Inc. (2000) 136 Ohio App.3d 101, 107. While appellant may claim that the absence of such a provision is "unfair:"
 It is well-established that parties to a contract in a commercial setting should be free to enter into whatever type of relationship they desire. A contract does not have to be fair or equitable to be enforceable. Contracts * * * can be unfair or favor one side over the other. * * * They are still binding and enforceable, so long as they are not procured by fraud, duress, overreaching or undue influence. Synergy Mech. Contractors v. Kirk Williams Co., Inc. (Dec. 22, 1998), Franklin App. No. 98AP-431, unreported, discretionary appeal not allowed (1999), 85 Ohio St.3d 1468. (Citations omitted.)
A possible reason for why a timeliness provision was not included is because the contract was a "credit agreement" between the parties. The contract bound appellant to pay "for all goods now or in the future sold" but did not have a provision requiring appellee to deliver any goods to appellant. The disputed provisions of the contract are provisions allowing appellee recovery if appellant "fails to pay [appellee] in accordance with credit terms set forth herein." Such a contractual structure between the parties allowed appellant to place a produce order with appellee as needed, and allowed appellee to have a contractual method of recovery if appellant failed to pay for the goods delivered. Therefore, appellant cannot claim he is bound by the provisions of the written contract based upon the "breach" of a contract provision that does not exist in the contract.
Second, even if the contract could somehow be construed to include a provision requiring timely delivery of goods, there is a question of fact concerning whether appellee breached that provision.[1] Kenneth Roth testified that the delivery on December 10 "really wasn't out of the norm as far as time." He stated that the delivery time "varied anywhere from 9:30 to 11:30 in the morning." He also testified that there were problems delivering the produce on December 10 because:
 For delivering to Mr. Scartz's restaurant, you have to park in the rear parking lot of his establishment, and at that time there were three other delivery vehicles in there. You cannot park in the alley to the south or to the west of his establishment, so our driver called us and said he couldn't find anywhere to park to make the delivery.
"The weight to be given the evidence and the credibility of the witnesses are primarily matters for the finder of fact to determine, and it is not the function of the appellate court to substitute its judgment for that of the factfinder." Mayflower Transit, Inc. v. Commercial Trailer Co. (Sept. 28, 2000), Franklin App. No. 99AP-1058, unreported, discretionary appeal not allowed (2001), 91 Ohio St.3d 1432, following Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Concerning the question as to whether the delivery was late, the trial court stated: "Now, whether it was late or not and whether it was late by intention, I don't know." Since the trial court could not reach a determination concerning this issue, it would be impossible for us to somehow find appellee's delivery was untimely based solely upon the transcript. Accordingly, we find appellant cannot be excused from the terms of the written contract with appellee based upon the timeliness of the delivery on December 10, 1999. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that even if appellee substantially performed its obligations under the written contract, appellee is not entitled to the enforcement of the contractual attorney fee provision. Appellant claims the attorney fee provision in the contract "is unenforceable as contrary to public policy in Ohio." Appellant argues in his third assignment of error the trial court erred in making an award of attorney fees in the absence of any evidence that such fees were necessary and reasonable. Because of the interrelated issues in appellant's second and third assignments of error, we will address them together.
An appellate court will not reverse a trial court's award of attorney fees unless there was an abuse of discretion by the trial court. Curtis v. Curtis (2000), 140 Ohio App.3d 812, 815. Abuse of discretion is more than an error of law or judgment "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
"A party seeking to recover attorney fees on a breach of contract claim may do so only if the parties contracted to reimburse the prevailing party for the cost of enforcing the contract terms." Brzezinski v. Feuerwerker (Sept. 14, 2000), Cuyahoga App. No. 74288, unreported, discretionary appeal not allowed (2001), 91 Ohio St.3d 1428, following Goldfarb v. The Robb Report, Inc. (1995), 101 Ohio App.3d 134.
 It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom "is as fundamental to our society as the right to write and to speak without restraint." Governmental interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts. Nottingham Homeowners' Assn., Inc. v. Darby (1987), 33 Ohio St.3d 32, 36, quoting Blount v. Smith (1967), 12 Ohio St.2d 41, 47.
It is not against public policy or statutory law for a provision regarding attorney fees to be included in a contract for delivery of goods on an open account in a commercial setting if the parties had equal bargaining power and the contract was not entered into under compulsion or duress. Gordon Food Serv., Inc. v. Ahmed (Jan. 21, 1999), Cuyahoga App. No. 74890, unreported. However, it is reversible error if the trial court "made no determination as to whether the guarantee was made by parties with equal bargaining power, with no coercion or duress." Id.[2]
A review of the present case shows appellee's complaint against appellant was for the purpose of collecting an amount owed by appellant. The relevant provision of the contract states if appellant failed to pay appellee in accordance with the credit terms set forth in the contract, appellant "agrees that [appellee] may assess interest on [appellant's] outstanding account balance at a rate of 1.5% per month (18% per anum) [and] further agrees to pay attorney fees equal to one-third of the outstanding account balance and all court costs if same are incurred by [appellee] to collect the account."
While there is evidence the contract was between two commercial entities, there is no evidence that the parties had equal bargaining power or whether the contract was not entered into under compulsion or duress. Additionally, a review of the record shows no evidence was presented concerning the amount of attorney fees incurred by appellee and whether the attorney fees were necessary and reasonable. In a case similar to the present case, an appellate court stated:
 A "reasonable" fee must be related to the work reasonably expended on the case and not merely to the amount of the judgment awarded. The proper method for calculating reasonable attorney fees is set forth in Bittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143 and DR 2-106(B) * * *.
* * *
 The contract provides that the prevailing party is entitled to recover attorney fees. The party still must prove what those reasonable fees are. At the hearing, [the prevailing party] submitted no evidence of any attorney fees for which it was entitled. Thus, the trial court could not award any fees to [the prevailing party]. Stults Assoc., Inc. v. United Mobile Homes, Inc. (July 16, 2001), Marion App. No. 9-01-09, unreported.
Accordingly, we find the trial court abused its discretion when it awarded attorney fees to appellee based solely upon the judgment amount without evidence that: (1) appellant had equal or greater bargaining power when the contract was executed between the parties; (2) the contract was not entered into under compulsion or duress; (3) attorney fees were incurred by appellee and the amount of those fees; and (4) the attorney fees were necessary and reasonable. Appellant's second and third assignments of error are sustained.
Appellant's first assignment of error is overruled and his second and third assignments of error are sustained. The trial court's judgment in favor of appellee in the amount of $4,059.96 (the amount owed under the contract) plus interest and court costs is affirmed. The trial court's award of attorney fees in favor of appellee is reversed, and this matter is remanded to that court for further proceedings consistent with this decision.
Judgment affirmed in part and reversed in part; case remanded.
BROWN, TYACK and DESHLER, JJ., concur.
[1] Appellant argued in his counterclaim against appellee that the parties "entered into an oral contractual agreement whereby [appellee] was to provide fresh produce products to [appellant's] restaurant" which included "requirements as to * * * the time of delivery." However, a review of the transcript shows that no evidence was presented during the trial concerning this alleged oral agreement.
[2] We note that R.C. 1301.21 does not apply to the present case because the contract between the parties is not a "contract of indebtedness" pursuant to R.C. 1301.21(A). See, also, New Market Acquisitions, Ltd. v. Powerhouse Gym (S.D.Ohio 2001),154 F. Supp.2d 1213.